**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LIU JO S.P.A., | Case No. 21-6543 |
| Plaintiff, | |
| v. | |
| KENDALL JENNER, KENDALL JENNER, INC., ELITE WORLD GROUP, LLC, and THE SOCIETY MODEL MANAGEMENT, INC., | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## COMPLAINT

Plaintiff Liu Jo S.p.A. ("Liu Jo"), by and through its undersigned attorneys, Sterne, Kessler, Goldstein & Fox, P.L.L.C., and for its Complaint against Defendants Kendall Jenner, Kendall Jenner, Inc., Elite World Group, LLC, and The Society Model Management, Inc. ("The Society"), (collectively, "Ms. Jenner"), states as follows:

## INTRODUCTION

1.      This is an action to recover damages resulting from Ms. Jenner's breach of an Agreement to provide modeling services to Liu Jo. In early 2019, Liu Jo—a world-famous Italian clothing designer—contracted with Ms. Jenner for Ms. Jenner to appear for two photoshoots, among other obligations. The first photoshoot was intended to be used for Liu Jo's Spring/Summer 2020 campaign and the second photoshoot was originally intended to be used for Liu Jo's Fall/Winter 2020 campaign. Ms. Jenner's services as obligated under the Agreement were to be performed in exchange for scheduled payments by Liu Jo totaling $1,500,000.00 plus a 20% service fee.

2.      The parties executed their Agreement on July 11, 2019, memorializing their intent. The July 11, 2019 "Kendall Jenner-Liu Jo Term Sheet" (hereinafter referred to as the "Agreement") provides details of the obligations of Ms. Jenner ("Talent") and Liu Jo ("Brand"). The executed Agreement is attached hereto as Exhibit A.

3.      Under the Agreement, Liu Jo was required to pay 25% of the total compensation upon execution of the Agreement on July 11, 2019, pay an additional 25% of the total compensation by July 12, 2019, send a third payment totaling 25% of the total compensation by February 1, 2020, pay the remainder of the contract two days prior to the second and final shoot date, and cover additional service fees, travel costs, and other expenses as detailed in the Agreement. Liu Jo promptly made all required payments as scheduled in anticipation of Ms. Jenner's performance, totaling $1,350,000.00 to date. Kendall Jenner, through her company Kendall Jenner, Inc., directed Liu Jo to remit all payments under the Agreement to The Society in New York City.

4.      In July 2019, Ms. Jenner traveled to Europe for the Spring/Summer 2020 campaign photoshoot, fulfilling her obligations for one of the two agreed-upon photoshoots, one of the many obligations she was required to fulfill under the Agreement, which also required her to perform certain social media activities and conduct interviews.

5.      On February 1, 2020, Liu Jo made the third 25% payment to Ms. Jenner, via The Society, per the Agreement. At the time, Ms. Jenner had a continuing obligation, per the Agreement, to attend and participate in the second photoshoot. Then, in March of 2020, due to the early stages of the Coronavirus pandemic and related travel restrictions, Liu Jo offered to reschedule the second photoshoot so that it could take place in the Fall of 2020 for Liu Jo's Spring/Summer 2021 campaign.

6.      Liu Jo proposed multiple alternative dates and locations to Ms. Jenner for the second photoshoot to occur. Ms. Jenner repeatedly failed to provide Liu Jo with definitive responses to Liu Jo's proposals, proposed no reasonable alternatives, and ultimately turned down all of Liu Jo's good-faith offers of compromise.

7.      In September 2020, Ms. Jenner confirmed the date of September 28, 2020 for Ms. Jenner's second photoshoot. On September 17, Ms. Jenner reneged on the September 28 date and instead proposed that the photoshoot take place in October.

8.      Liu Jo learned that Ms. Jenner would be traveling to Italy in September 2020 to perform a photoshoot for a different designer—during the same exact time period the parties had contemplated that Ms. Jenner perform the second photoshoot for Liu Jo—and at the same time that Ms. Jenner represented to Liu Jo that it was "impossible" for Ms. Jenner to travel to Italy.[1] Upon learning Ms. Jenner was traveling to Italy, Liu Jo offered to split the cost of her private flight to allow her to perform the second photoshoot in Milan, but Ms. Jenner refused this offer.

9.      By late September 2020, it became clear that Ms. Jenner had no intention to fulfill her obligations under the Agreement by performing the second photoshoot in October 2020. Ms. Jenner continued to fail to respond to urgent requests and communications relating to the logistics of the mid-October 2020 proposed photoshoot.

10.     On October 5, 2020, after multiple efforts by Liu Jo to secure photoshoot dates garnered no response from Ms. Jenner, Liu Jo informed Ms. Jenner that she was in breach of her obligations under the Agreement. On October 7, 2020, Ms. Jenner responded to Liu Jo claiming

---

[1] Katie Storey, "Kendall Jenner proves she can keep a low profile and still be style savvy as she rocks up to Versace shoot" Metro UK, Sep. 27, 2020, *available at* https://metro.co.uk/2020/09/27/kendall-jenner-proves-she-can-keep-a-low-profile-and-still-be-style-savvy-as-she-rocks-up-to-versace-shoot-13334251/ (last accessed Jul. 22, 2021).

Ms. Jenner was not in breach of the Agreement, and that it was "impossible" for Ms. Jenner to travel to Italy in the Fall of 2020.

11.     Due to Ms. Jenner's refusal to negotiate in good faith, Liu Jo was forced to find replacement models and restructure its entire Spring/Summer 2021 photoshoot—at great expense to Liu Jo—due to Ms. Jenner's refusal to uphold her end of the bargain.

12.     According to the Agreement, at least the first and second payments made by Liu Jo to Ms. Jenner are to be "promptly refunded to [Liu Jo] if [Ms. Jenner] does not attend the shooting and the shoot cannot be rescheduled to a mutually convenient date." Pursuant to at least that provision of the Agreement and over the next several months, Liu Jo requested a refund of payments made pursuant to the Agreement in light of Ms. Jenner's breach. To date, Liu Jo has paid Ms. Jenner $1,350,000.00 for services Ms. Jenner is obligated to perform under the Agreement, including the second photoshoot. Ms. Jenner has breached the Agreement by failing to meet her obligations under the Agreement and no payments have, as yet, been refunded to Liu Jo by Ms. Jenner.

13.     As a result of Ms. Jenner's dilatory and bad-faith actions, Liu Jo has been forced to file this lawsuit.

**PARTIES**

14.     Plaintiff Liu Jo S.p.A. is an Italian corporation headquartered in Carpi, Italy.

15.     On information and belief, Defendant Kendall Jenner is an individual who resides in the State of California.

16.     On information and belief, Defendant Kendall Jenner, Inc. is a corporation organized under the laws of California, with its principal place of business located in Los Angeles, California. On information and belief, Defendant Kendall Jenner is the sole active Officer of Kendall Jenner, Inc. and operates Kendall Jenner, Inc. as an alter ego.

17.     On information and belief, Defendant Elite World Group, LLC is a Limited Liability Company organized under the laws of New York, with its principal place of business located in New York, New York. On information and belief, Elite World Group, LLC serves as the parent company to Defendant The Society Model Management, Inc.

18.     On information and belief, Defendant The Society Model Management, Inc., is a corporation organized under the laws of New York, with its principal place of business located in New York, New York. On information and belief, Defendant The Society Model Management, Inc. is a subsidiary of Defendant Elite World Group, LLC.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), in that this is a civil action between Plaintiff Liu Jo, an Italian corporation, and Defendant Elite World Group, LLC, a New York Limited Liability Company, Defendant The Society Model Management, Inc., a New York Corporation, Defendant Kendall Jenner, Inc., a California Corporation, and Defendant Kendall Jenner, a citizen of California, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

20.     Personal jurisdiction is proper in this district for Defendants Elite World Group, LLC and The Society Model Management, Inc. pursuant to CPLR 301 in that the two Defendants are both located and incorporated in New York.

21.     Personal jurisdiction is proper in this jurisdiction for Defendants Kendall Jenner and Kendall Jenner, Inc. pursuant to CPLR 302 in that Defendants Kendall Jenner and Kendall Jenner, Inc. have availed themselves to the benefits of this jurisdiction, have maintained sufficient contacts with the forum, and should reasonably expect to defend its actions in this jurisdiction. Through Elite World Group and The Society Model Management, Kendall Jenner and Kendall Jenner, Inc. engaged in purposeful activities in the state of New York. On information and belief,

Elite World Group and The Society Model Management act as agents on behalf of Kendall Jenner and Kendall Jenner, Inc. With Ms. Jenner's knowledge and consent, Elite World Group and The Society Model Management execute contracts in the state of New York on behalf of Kendall Jenner and Kendall Jenner, Inc. regarding Ms. Jenner's modeling appearances.

22.     Venue is proper in this District under 28 U.S.C. § 1391(b)(3), in that all Defendants are subject to personal jurisdiction in this District with respect to this action.

## FACTS

23.     Liu Jo is a major Italian clothing and accessory brand of prêt-à-porter fashion. The company designs, manufactures, and retails clothing and accessories for men, women, and children. Liu Jo has consistently hired some of the top models in the world to market its brand, including world-famous English supermodel Kate Moss. Today, Liu Jo has stores and operations in 50 countries across Europe, Africa, Asia, and South America, and is a major player in the global fashion industry.

24.     For its 25th Anniversary campaign, Liu Jo sought to collaborate with Kendall Jenner to be the face of its #Bornin1995 advertising campaign, as Ms. Jenner also happened to be turning 25 years old in 2020. In a magazine interview, Ms. Jenner commented that she was "honoured to work with this brand and be the face of Liu Jo for this very special 25th Anniversary," and that "[w]orking with Liu Jo and following in the footsteps of such celebrated icons/models is a true honor."[2]

---

[2] Rohma Theunissen, "Kendall Jenner On Being The Face Of Liu Jo's #Bornin1995 Campaign," Harper's Bazaar, Feb. 19, 2020, *available at* https://www.harpersbazaararabia.com/fashion/fashion-now/exclusive-interview-kendall-jenner-on-being-the-face-of-liu-jos-bornin1995-campaign (last accessed Jul. 22, 2021).

A.     **The Agreement**

25.     On July 11, 2019, Liu Jo contracted with Ms. Jenner for Ms. Jenner to appear for two photoshoots as part of its 25th Anniversary #Bornin1995 advertising campaign.

26.     The parties executed a term sheet memorializing this Agreement, and Ms. Ayisha Morgan of Elite World Group signed the Agreement as an authorized representative of The Society and Ms. Jenner.

27.     Under the Agreement and among other obligations, Ms. Jenner was to appear for two shoot dates, one for the Spring/Summer 2020 campaign and one for the Fall/Winter 2020 campaign, in exchange for payment of $1,500,000.00 plus a 20% service fee in compensation.

28.     The Agreement explicitly required the parties to "work together in good faith" among other obligations. While the Agreement contemplates that a long-form agreement would eventually be created, no such Agreement was ever executed between the parties. Moreover, the parties began performance of the obligations in the executed Agreement without completing any subsequent Agreement.

29.     The executed Agreement was drafted by Ms. Jenner in New York, New York, and is a valid, binding, and enforceable contract governed by New York law.

30.     Under the Agreement, Ms. Jenner was required to participate in two photoshoots, one for Liu Jo's Spring/Summer 2020 collection, and the second for Liu Jo's Fall/Winter 2020 collection. In addition, Ms. Jenner would attend a fitting day before each photoshoot and make one event appearance wearing Liu Jo's clothing. Further, Ms. Jenner was required to post on social media regarding Liu Jo: two posts and two stories on Instagram related to the Spring/Summer 2020 line; two posts and two stories on Instagram related to the Fall/Winter 2020 line; and two stories on Instagram at Ms. Jenner's discretion. Ms. Jenner was also obligated to engage in eight email interviews with pre-approved international and selected magazines.

31.     To compensate Ms. Jenner for her services, Liu Jo was required to pay 25% of the total compensation upon execution of the Agreement, 25% of the total compensation by July 12, 2019, 25% of the total compensation by February 1, 2020, and 25% of the total compensation two days before the Fall/Winter 2020 photoshoot. In addition, Liu Jo was required to pay a 20% service fee for each payment, purchase round-trip first-class airfare for Ms. Jenner and business-class airfare for one companion, provide airport greeters for arrival and departure, purchase 5-star hotel accommodations of Ms. Jenner's choosing, cover all costs associated with hair and makeup stylists of Ms. Jenner's choosing (including travel and accommodations), and provide adequate security staff in connection with the photoshoots.

32.     All payments made by Liu Jo were to be remitted to The Society in New York, City.

33.     The Agreement contains various other provisions that are not relevant to the instant dispute.

**B.     Liu Jo's Good-Faith Efforts**

34.     Liu Jo fulfilled all of its obligations under the Agreement, including strictly adhering to the payment schedule. To date, Liu Jo has paid Ms. Jenner $1,350,000.00 for Ms. Jenner's services.

35.     After completing the first photoshoot, Ms. Jenner was contractually obligated under the Agreement to take part in a second photoshoot for Liu Jo during the Spring of 2020. The parties originally negotiated a date of March 31, 2020 for the second photoshoot to also take place in London, England.

36.     In March of 2020, the Coronavirus pandemic disrupted travel and business operations worldwide. In recognition of the travel restrictions and lockdown measures associated

with the pandemic, Liu Jo contacted Ms. Jenner in early March 2020 to suggest delaying the second photoshoot until the Fall of 2020. Ms. Jenner agreed.

37.     In September and October 2020, Liu Jo contacted Ms. Jenner multiple times in order to schedule the second photoshoot and plan logistics per the parties' Agreement. However, Ms. Jenner repeatedly failed to provide Liu Jo with definitive responses to Liu Jo's messages and contact attempts, proposed no reasonable alternatives, and ultimately turned down all of Liu Jo's good-faith offers of compromise.

38.     Liu Jo made all good-faith efforts to attempt to plan and arrange logistics for the second photoshoot to occur in a manner that would be safe for all parties involved. For example, Liu Jo—upon learning Ms. Jenner would be traveling to Italy by private flight—offered to split the cost of the private flight for Ms. Jenner to travel from the United States to Italy to perform the second photoshoot in Milan. Despite Liu Jo's offer, Ms. Jenner arrived in Italy by private flight from the United States with another model in late September 2020 to perform a photoshoot for a different designer and refused to participate in the second photoshoot with Liu Jo despite being in Italy.

39.     After Ms. Jenner refused to partake in a September shoot, she suggested a number of days in October where the parties could meet in London, England for the second photoshoot. However, when Liu Jo picked two days from Ms. Jenner's suggestions, October 15th and 16th, Ms. Jenner ceased responding to Liu Jo and would not confirm that she would attend the October dates. Rather, Ms. Jenner and her team did not respond until October 7th and only after Liu Jo informed her that it considered her in breach of the contract and that, therefore, the contract was terminated.

C.    **Ms. Jenner's Dilatory and Bad-Faith Acts**

40.    Despite all best efforts and multiple proposed alternative arrangements for the second photoshoot, Liu Jo was consistently met with silence or rejection on the part of Ms. Jenner.

41.    When Ms. Jenner did respond to Liu Jo's proposals—generally weeks or months after ignoring multiple emails and phone calls—she consistently rejected Liu Jo's attempts to reschedule the photoshoot, claiming that it would be "impossible" for her to travel to and work in Italy.

42.    However, despite Ms. Jenner's claims that it would be "impossible" for her to travel to or work in Italy in the Fall of 2020, Liu Jo later learned that Ms. Jenner did indeed travel to Italy in September 2020—during the same time period the parties contemplated for the second photoshoot to occur—to perform a photoshoot for another Italian fashion designer.

43.    Ms. Jenner also claimed that she was unable to travel to Italy due to her health concerns relating to the Coronavirus pandemic. However, at the same time, Ms. Jenner was repeatedly reported to be violating CDC guidelines by engaging in multiple international non-essential trips and hosting large parties with her friends.[3] Also as detailed *supra*, Ms. Jenner had no such health concerns when traveling to Italy in September 2020 to perform a photoshoot.

44.    In addition to Ms. Jenner's misrepresentations about her inability to travel to and work in Italy, Ms. Jenner consistently refused to respond to Liu Jo's multiple attempts to reschedule the second photoshoot, or backed out of newly made arrangements at the last minute. For example, the parties discussed scheduling the photoshoot to take place between October 12

---

[3] Laura Zornosa, "Kendall Jenner held star-studded birthday bash as daily COVID cases rise to 99,321" Los Angeles Times, Nov. 7, 2020*, available at* https://www.latimes.com/entertainment-arts/story/2020-11-02/kendall-jenner-held-star-studded-birthday-bash-new-daily-covid-cases-rose-to-99-321 (last accessed Jul. 22, 2021).

and October 28. Liu Jo attempted to secure the dates of October 15-16 in line with the parties'
discussions. Despite repeated emails requesting updates, Ms. Jenner failed to respond to Liu Jo
regarding the second photoshoot until eight days prior to the proposed scheduled photoshoot—on
October 7—and only after Liu Jo effectively terminated the contract due to Ms. Jenner's breach.

45.     In sum, Ms. Jenner made no good-faith effort to reschedule the second photoshoot
or perform her obligations detailed in the Agreement, despite Liu Jo's flexibility and multiple
proposed alternatives, and despite Liu Jo making payment to Ms. Jenner for services she refused
to render.

**D.     <u>Events Immediately Precipitating This Litigation</u>**

46.     After notifying Ms. Jenner that she was in breach of the Agreement, Liu Jo
unsuccessfully attempted for several months to request a refund of payments made by Liu Jo to
Ms. Jenner in light of Ms. Jenner's breach. Among other things, the Agreement states that the first
and second payments made by Liu Jo under the Agreement "shall be promptly refunded to [Liu
Jo] if [Ms. Jenner] does not attend the shooting and the shoot cannot be rescheduled to a mutually
convenient date."

47.     Having no success in obtaining a refund of any monies owed to Liu Jo in light of
Ms. Jenner's breach, Liu Jo retained the undersigned counsel. In responses to the undersigned
counsel, Ms. Jenner continued to refuse to return monies paid by Liu Jo for services not rendered,
maintaining that it was impossible for Ms. Jenner to travel to or work in Italy during the Fall of
2020 for Liu Jo, despite Ms. Jenner doing exactly that, only for a different fashion designer, and
despite evidence of Ms. Jenner's travels to Italy and around the world that have been well
documented by international media.

48.     Ms. Jenner also claimed—for the first time—that she was not able to attend the second photoshoot because Liu Jo failed to obtain a work permit for her. To date, Ms. Jenner has failed, despite repeated requests, to provide any evidence of the type of work permit that Ms. Jenner was allegedly required to obtain to travel to and work in Italy. No such work permit was obtained for the first photoshoot, nor was the requirement of a work permit ever discussed by the parties until long after Ms. Jenner was in breach of the Agreement. Regardless, it was Ms. Jenner's responsibility to obtain a work permit, if necessary, and Liu Jo had no contractual or legal obligation to obtain any such work permit.

49.     Ms. Jenner has continued to refuse to return any funds paid by Liu Jo despite Ms. Jenner's failure to perform the obligations set forth in the term sheet, leading to the filing of this lawsuit.

## <u>COUNT I: BREACH OF CONTRACT</u>

50.     Liu Jo repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

51.     The Agreement is a valid, binding, and enforceable contract governed by New York law.

52.     Liu Jo has performed all of its obligations under the Agreement, including, but not limited to, making required payments to The Society.

53.     Ms. Jenner has continually breached her obligations under the Agreement, including, but not limited to, through her actions outlined in paragraphs 23 through 49 above.

54.     Liu Jo has suffered considerable financial harm and damages as a result of Ms. Jenner's breach.

55.     As a result of Ms. Jenner's breach, Liu Jo has been damaged by an amount to be determined at trial, but which is no less than $1,800,000.00.

## COUNT II: BREACH OF GOOD FAITH AND FAIR DEALING

56.     Liu Jo repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

57.     A covenant of good faith and fair dealing is implied in all contracts under New York law. A covenant of good faith and fair dealing prevents a party from destroying or injuring the right of another party to receive the fruits of the contract.

58.     The Agreement is a valid, binding, and enforceable contract governed by New York law.

59.     Liu Jo has performed all of its obligations under the Agreement, including, but not limited to, making required payments to The Society for Ms. Jenner's services.

60.     Nonetheless, Ms. Jenner has failed to satisfy her obligation to participate in the second photoshoot, causing substantial harm to Liu Jo. Ms. Jenner's conduct was intentional, willful, and specifically designed to prevent successful completion of the Agreement.

61.     Additionally, Ms. Jenner has continually acted in bad faith through the course of Liu Jo's performance under the Agreement. These additional acts of bad faith include, but are not limited to, Ms. Jenner's actions outlined in paragraphs 23 through 49 above.

62.     Due to Ms. Jenner's bad-faith conduct, Liu Jo has been damaged by an amount to be determined at trial, but which can be no less than $1,350,000.00.

## COUNT III: UNJUST ENRICHMENT

63.     Liu Jo repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

64.     Ms. Jenner received monies that Liu Jo paid in anticipation of services Ms. Jenner agreed to provide.

65.     Ms. Jenner refused to provide the agreed-upon services.

66.     Ms. Jenner failed to make restitution to Liu Jo for services she failed to render.

67.     It is against equity and good conscience to permit Ms. Jenner to retain the benefit of the payments for services she has refused to render.

68.     Ms. Jenner has been unjustly enriched in an amount to be determined at trial but no less than $900,000.

## PRAYER FOR RELIEF

WHEREFORE, Liu Jo respectfully requests that the Court award judgment in its favor and against Ms. Jenner, and that the Court award Liu Jo damages in an amount to be proven at trial, but not less than $1,800,000.00 plus interest, as well as Liu Jo's attorneys' fees and litigation costs, and any additional damages and such other relief as the Court deems appropriate.

## JURY DEMAND

Liu Jo hereby demands a trial on all claims triable by jury.

Dated: August 2, 2021                    Respectfully submitted,

                                         /s/ *Nicholas J. Nowak*
                                         Nicholas J. Nowak (#139770)
                                         Byron L. Pickard (*pro hac vice* forthcoming)
                                         Matthew M. Zuziak (*pro hac vice* forthcoming)
                                         Paige E. Cloud (*pro hac vice* forthcoming)
                                         STERNE KESSLER GOLDSTEIN & FOX, P.L.L.C.
                                         1100 New York Ave., N.W., Suite 600
                                         Washington, D.C. 20005-3934
                                         Telephone No.: (202) 371-2600
                                         Facsimile No.: (202) 371-2540
                                         nnowak@sternekessler.com
                                         bpickard@sternekessler.com
                                         mzuziak@sternekessler.com
                                         pcloud@sternekessler.com

                                         *Attorneys for Plaintiff Liu Jo S.p.A.*