ORIGINAL

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/22/22
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -X

LIU JO S.P.A.,

                    Plaintiff,                    21 Civ. 6543 (LLS)

          - against -                             OPINION & ORDER

KENDALL JENNER, KENDALL JENNER,
INC., ELITE WORLD GROUP, LLC, and
THE SOCIETY MODEL MANAGEMENT, INC.,

                    Defendants.
- - - - - - - - - - - - - - - - - - - -X

     Plaintiff Liu Jo S.P.A. ("Liu Jo"), an apparel company,

brings this diversity action against defendants Kendall Jenner

("Jenner"), Kendall Jenner, Inc. ("KJI"), Elite World Group, LLC

("Elite"), and The Society Model Management, Inc. ("Society")

asserting claims they breached their contract with Liu Jo and

were unjustly enriched. The contract was for Jenner, through

KJI, to appear as the face of Liu Jo's 25th Anniversary campaign.

     Defendants Elite and Society move to dismiss Liu Jo's

complaint for failure to state a claim upon which relief can be

granted under Federal Rule of Civil Procedure Rule 12(b)(6).

Dkt. No. 26. Simultaneously, defendants Jenner and KJI also move

to dismiss for failure to state a claim, as well for dismissal

for lack of personal jurisdiction pursuant to Federal Rule of

Civil Procedure Rule 12(b)(2). Dkt. No. 40.

     For the reasons below, Elite and Society's motion to

dismiss for failure to state a claim is granted in part and

denied in part. Jenner and KJI's motion to dismiss for lack of

jurisdiction is denied and their motion to dismiss for failure to state a claim is granted in part and denied in part.

## BACKGROUND

The following facts are taken from the Complaint. Dkt. No. 1 ("Compl."). Liu Jo is an Italian corporation headquartered in Capri, Italy that specializes in the sale of clothing and fashion accessories. Id. ¶¶ 15, 23.

Kendall Jenner is a fashion model who resides in the state of California. Id. at ¶ 15. Kendall Jenner, Inc. is a corporation organized under the laws of California with its principal place of business in Los Angeles, California. Id. at ¶ 16. Kendall Jenner is the alleged sole active officer of Kendall Jenner, Inc. Id. She allegedly operates KJI as an alter ego. Id.

Elite World Group, LLC is the parent corporation of The Society Model Management, Inc. Id. at ¶ 17. Both are organized under the laws of New York with their principal places of business in New York, New York. Id. at ¶¶ 17 & 18. Elite and Society operate as agents on behalf of Jenner and KJI for the contracting of Jenner's modeling appearances. Id. ¶ 21.

On July 11, 2019, Liu Jo and KJI executed the "Kendall Jenner-Liu Jo Term Sheet" (the "Term Sheet"). Id. at ¶¶ 2, 25; Id. Ex. A at 2. The Term Sheet was signed by Ayisha Morgan, the General Counsel of Elite World Group, LLC, as an authorized representative of KJI. Id. ¶ 26; Id. Ex. A at 2, 4.

The contract was centered around Jenner providing modeling services for two photoshoots in connection with Liu Jo's Spring/Summer 2020 and Fall/Winter 2020 campaigns in order to promote Liu Jo's "stores and operations in 50 countries across Europe, Africa, Asia, and South America." Id. ¶ 23. For these campaigns, Jenner, through KJI, was required to provide modeling services at two photoshoot dates and one event, generate several social media posts, and participate in eight interviews that would be conducted via email. Id. ¶¶ 27, 30; Id. Ex. A at 1. The photoshoots and event were to be scheduled subject to Jenner's, through KJI's, confirmation and availability. Id. Ex. A at 2. In exchange, Liu Jo was required to pay, in installments, $1,500,000 plus a 20% service fee to KJI c/o The Society Model Management and provide Jenner with airfare, accommodations, airport greeters, ground transportation, security, and hair and makeup stylists. Id. Ex. A at 3-4.  All payments were remitted according to schedule to Society in New York.  Id. ¶ 32. To date, Liu Jo has paid $1,350,000. Id. at ¶ 34.

In July 2019, Jenner traveled to Europe to attend the first of the two photoshoot dates. Id. ¶¶ 4, 35. The second (and final) photoshoot was set to take place in Europe on March 31, 2020. Id. ¶¶ 35-36. However, as a result of the COVID-19 pandemic, Liu Jo requested that the parties postpone the shoot until Fall 2020, with the intent to use the photos for the

Spring/Summer 2021 campaign, instead of the Fall/Winter 2020 campaign as agreed. Id. ¶¶ 5, 14, 36. KJI agreed to Liu Jo's requested postponement. Id. ¶ 36.

The parties attempted to negotiate new dates and locations for the second shoot. Id. ¶¶ 10, 41. However, Jenner, KJI, Society, and Elite allegedly repeatedly failed to provide Liu Jo with definitive responses to Liu Jo's messages and ultimately turned down all of Liu Jo's suggested deferral dates on the grounds that travel was impossible. Id. ¶¶ 37, 42.

For example, Jenner declined to accept Liu Jo's offer to reschedule the second photoshoot in September and instead suggested dates in October when the parties could meet in London, England. Id. ¶ 39. Liu Jo picked two dates from Jenner's suggestions, October 15th, and 16th. Id. However, the defendants did not confirm Jenner's attendance and ceased responding to any of Liu Jo's messages until October 7th, after Liu Jo informed them that the contract was terminated because they were in breach of it. Id.

Subsequently, Liu Jo attempted to request a refund of all payments made thus far by Liu Jo to KJI. Id. ¶ 46. When the repayment attempts were unsuccessful, Liu Jo brought suit on August 8, 2021.

Defendants all move to dismiss this action.

**DISCUSSION**

- 4 -

I.    **12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction[1]**
      **a. Legal Standards**

On a motion to dismiss for lack of personal jurisdiction, "where, as here the Court relies on the pleadings," and chooses not to conduct an evidentiary hearing, the plaintiff has the burden of establishing a "prima facie showing of personal jurisdiction." Southern New England Telephone Co. v. Global NAPs Inc., 624 F.3d 123, 138 (2d Cir. 2010). In doing so, a plaintiff "may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" Mazloum v. Int'l Com. Corp., 829 F. Supp. 2d 223, 227 (S.D.N.Y. 2011) (quoting Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2d Cir. 1998)). In resolving the motion, the Court is "construing all pleadings and affidavits in the light most favorable to the plaintiff and resolving all doubts in the plaintiff's favor." Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2011). But it is not bound to "accept as true a legal conclusion couched as a factual allegation." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59 (2d Cir. 2012).

    **b. Kendall Jenner and Kendall Jenner, Inc.**

---

[1] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). Elite and Society do not contest the exercise of personal jurisdiction over them by this Court in this matter.

The reach of this Court's personal jurisdiction, in this case, is governed by the laws of the forum state, New York. See Spiegel v. Schulmann, 604 F.3d 72, 76 (2d Cir. 2010). Accordingly, the Court must first decide whether "jurisdiction is appropriate under the relevant state law, and then decide whether the exercise of jurisdiction comports with due process." Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir. 1963) (en banc).

### i.   Whether Jurisdiction Exists Under New York Law

KJI is "a corporation organized under the laws of California, with its principal place of business located in Los Angeles, California." Compl. ¶ 16. Kendall Jenner, the "sole active officer of Kendall Jenner, Inc." is "an individual who resides in the State of California." Id. at ¶ ¶ 15-16. Accordingly, Liu Jo asserts that specific personal jurisdiction exists under the New York long-arm statute, allowing a court to "exercise personal jurisdiction over any non-domiciliary, . . . who in person or through an agent . . . transacts any business within the state." N.Y. C.P.L.R. 302(a)(1).

In deciding whether it has a jurisdictional basis on which to exercise its powers over a party, a court evaluates "(1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." Licci, 673 F.3d at 60.

**1. Whether Defendants Have Transacted Business in New York**

As to whether the defendants transacted business in New York, Courts consider:

(i)   whether the defendant has an on-going contractual relationship with a New York corporation;
(ii)  whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship;
(iii) what the choice-of-law clause is in any such contract;
(iv)  and whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004). No one factor is determinative as the "ultimate determination is based on the totality of the circumstances." Id. The Court address each factor in turn.

The third factor, the choice-of-law clause, weighs against finding that Jenner and KJI conducted business in New York. The Term Sheet in this case contains no choice of law provision, but "a choice of law clause alone is not dispositive, and neither is its absence." Cyberscan Tech., Inc. v. Sema Ltd., No. 06 CIV. 526, 2006 WL 3690651, at *3 (S.D.N.Y. Dec. 13, 2006) (citation and internal quotations omitted).

The remaining three factors suggest that Jenner and KJI did transact business in New York. The first factor, whether Jenner and KJI had an on-going contractual relationship with a New York corporation, weighs in favor of establishing personal

-7-

jurisdiction over them. Although Liu Jo is not a New York
corporation, Jenner and KJI had an on-going contractual
relationship with New York corporations, Elite World Group, LLC
and The Society Model Management, Inc., both of with are
organized under the laws of New York and have their principal
place of business in New York, New York. See Compl. ¶ ¶ 14, 17-
18.

Jenner and KJI argue that their contract with Elite and
Society is insufficient to satisfy this prong because that
contract is separate from the contract that has allegedly been
breached in this case. Dkt. No. 50 (Def.'s Reply Mem.) at 2-3.
In support of their argument, they cite Cyberscan Tech, which
held that "as plaintiff is not a New York corporation, it cannot
be said that defendants had at the time of the events in
question an on-going relationship with a New York corporation
(although defendants did perhaps have an ongoing relationship
with the New York law firm and public relations firms that
assisted with the [contract])." Cyberscan Tech., Inc., 2006 WL
3690651, at *3.

However, the facts of this case are distinguishable. Here,
Jenner and KJI have more than an ongoing relationship with Elite
and Society. Rather, Elite and Society are allegedly agents of
Jenner and KJI, which have been granted authority to enter
contracts for Jenner's and KJI's benefit. See Compl. ¶ 21.

The actions of an agent are attributable to the principal and "support New York's assertion of jurisdiction over" the principal when the agent "engaged in purposeful activities in this State in relation to [plaintiff's] transaction for the benefit of and with the knowledge and consent of the [principal] and that the [principal] exercised some control over [agent] in the matter." Kreutter v. McFadden Oil Corp., 522 N.E.2d 40, 44 (1988).

Here, the Complaint alleges that Jenner and KJI purposefully contracted with Elite and Society, New York corporations, so that Elite and Society could execute contracts, like the contract with Liu Jo, on Jenner's and KJI's behalf, Compl. ¶ 21, and that Jenner and Jenner, Inc. exercised some control over Elite and Society during the negotiation of that contract with Liu Jo. Thus, Jenner and KJI had an on-going contractual relationship with a New York corporation.

On balance, the second factor, whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship, weighs in favor of finding personal jurisdiction over Jenner and KJI. The Complaint makes no allegation that either Jenner or KJI visited New York. But it does allege that the contract was negotiated and executed by

them in New York. Compl. ¶ 21 ("With Ms. Jenner's knowledge and consent, Elite World Group and The Society Model Management execute contracts in the state of New York on behalf of Kendall Jenner and Kendall Jenner, Inc. regarding Ms. Jenner's modeling appearances."); id. ¶ 26 ("The parties executed a term sheet memorializing this Agreement, and Ms. Ayisha Morgan of Elite World Group signed the Agreement as an authorized representative of The Society and Ms. Jenner."); id. ¶ 29 ("The executed Agreement was drafted by Ms. Jenner in New York, New York.").

Accepting as true that the Agreement was drafted in New York City by Jenner's and KJI's agents, and drawing all inferences in Liu Jo's favor, it can be inferred that Jenner and Jenner, Inc. engaged in negotiations in New York. See Wilson v. Dantas, 9 N.Y.S.3d 187, 193 (1st Dep't 2015), aff'd, 80 N.E.3d 1032 (2017). To determine that the agreements were not at least partially negotiated and executed in New York is to draw inferences in defendants' favor. "This was not a 'purely ministerial' act of merely executing a contract in New York that had been negotiated elsewhere, which would likely be insufficient to confer personal jurisdiction." Id. at 193-94. Thus, even when, as here, Jenner and KJI use remote communication methods, like telephone and email, "to project itself into business transactions in the forum state, the communications may support jurisdiction when considered in the

totality of the circumstances." DLJ Mortg. Cap., Inc. v. Cameron Fin. Grp., Inc., No. 07 CIV. 3746, 2007 WL 4325893, at *4 (S.D.N.Y. Dec. 4, 2007). The negotiation and execution of the Term Sheet support a finding of personal jurisdiction over Jenner and KJI.

The fourth factor, whether the contract requires franchisees to send notices and payments into the forum state, likewise cuts in favor of exercising personal jurisdiction. "[T]he intentional use of a New York account in connection with a transaction supports personal jurisdiction pursuant to CPLR § 302 (a)(1)." Renren, Inc. v. XXX, 67 Misc. 3d 1219(A), 127 N.Y.S.3d 702, at *13 (N.Y. Sup. Ct. 2020), aff'd sub nom. Matter of Renren, Inc., 140 N.Y.S.3d 701 (2021). Here, the Term Agreement directs payments to be remitted to a New York corporation. Compl. Ex. A. at 2 ("to be paid to Talent c/o The Society Model Management"). The Complaint asserts that Liu Jo has made all required payments to Society. Id. ¶ 52. Therefore, the payments to Jenner and KJI's agents in New York support conferring jurisdiction over them.

Viewing these factors in total, Liu Jo has made a prima facie showing that Jenner and KJI transacted business in New York.

**2. The Cause of Action Arises from the Business Transaction**

A claim "arises from" a transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted." Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006) (citation omitted). This "inquiry under the statute is relatively permissive." Wilson, 9 N.Y.S.3d at 195.

Jenner and KJI argue that "only the specific contract from which Liu Jo's claim arises" can confer specific personal jurisdiction and the Court must disregard any other contracts executed by them in New York. Dkt. No. 41 (Def.'s Mem. Supp.) at 9. But even when focusing solely on the Term Sheet, there is an articulable nexus between Liu Jo's claims and the business transacted in New York because the Term Sheet was negotiated and executed in New York and claims seeking compensation arise from it directly. See Wilson, 9 N.Y.S.3d at 185 ("there is an articulable nexus between that transaction and his claims, because the Shareholder Agreement was formed in New York and his claims seeking compensation arise directly from it.").

Accordingly, under New York's long-arm statute, the Court is justified in exercising personal jurisdiction over Kendall Jenner and Kendall Jenner, Inc.

**ii.  Whether Jurisdiction Comports with Due Process**

Though neither Jenner nor KJI briefs the point, the Court briefly notes that the exercise of personal jurisdiction here also satisfies the requirements of due process. Sunward, 362 F.3d at 24 (noting that the exercise of long-arm jurisdiction must satisfy due process standards); Cyberscan Tech., Inc., 2006 WL 3690651, at *6 ("satisfaction of the section 302(a)(1) criteria will generally meet federal due-process requirements.").

Liu Jo has made a prima facie showing that due process is satisfied because Liu Jo's claims arise out of Jenner's and KJI's purposeful contacts with New York and the exercise of jurisdiction comports with "traditional notions of fair play and justice." Calder v. Jones, 465 U.S. 783, 788 (1984); Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). As discussed, Jenner and KJI have directed activities toward New York by engaging in an ongoing business relationship with New York corporations as their agents; utilizing their New York agents to negotiate and execute the contract with Liu Jo; and remitting payments to New York. The instant litigation arises from these activities. Thus, Jenner and KJI purposefully availed themselves of the privilege of doing business in New York and should have "reasonably anticipated being haled into court [h]ere." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).

- 13 -

Accordingly, it is constitutionally appropriate to exercise personal jurisdiction in this case. Kendall Jenner's and Kendall Jenner, Inc.'s motion to dismiss for lack of jurisdiction is denied.

## II.   12(b)(6) Motion for Failure to State a Claim

### a. Legal Standards

"To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 570 (citations omitted).

In determining whether a plaintiff is plausibly entitled to relief under Rule 12(b)(6), the court may consider the complaint and "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). The court reviews the complaint "liberally, accepting all

factual allegations as true, and drawing all reasonable inferences in the plaintiff's favor." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. Iqbal, 556 U.S. at 678.

**B. Breach of Contract Claim and the Implied Covenant of Good Faith and Fair Dealing Claim[2]**

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996). A duty of good faith and fair dealing is implied in every contract. Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P., 259 F. Supp. 3d 16, 37 (S.D.N.Y. 2017), aff'd, 712 F. App'x 85 (2d Cir. 2018). "The elements of a claim of breach of the implied covenant are similar to causes of action for breaches of duties of care, in that it requires the existence of a duty, breach of that duty, causation, and damages." Hadami, S.A. v. Xerox Corp., 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017).

---

[2] "In a diversity case we apply the substantive law of the forum state," here New York. Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437, 443 (2d Cir. 2005).

Society and Elite argue that Liu Jo has inadequately pled the existence of an agreement or duty between them. Jenner moves for dismissal on the same grounds. She, along with KJI, also moves for dismissal on the grounds that the breach of the implied covenant claim is duplicative of the breach of contract claim.

### 1. **Parties to the Contract**

There is no claim that Kendall Jenner, Inc. is not a party to the Term Sheet. The Court addresses each remaining defendant in turn.

#### i.   **Society and Elite**

There is no plausible allegation of a valid and enforceable contract between Liu Jo and Society or Elite, as principal parties. The Term Sheet identifies the parties bound to it as "Kendall Jenner, Inc. c/o The Society Model Management Inc. ("Talent"); and Liu Jo S.P.A ("Brand")." Compl. Ex. A. at 1. The parties place a different meaning on the same term: "c/o." Liu Jo argues that that provision—c/o The Society Model Management Inc.—and the fact that Ayisha Morgan, General Counsel of Elite World Group, signed the Term Sheet as the "Authorized Representative of TALENT" is sufficient to bind Elite and Society as parties to the Agreement. Dkt. No. 47 at 6. Whereas, Elite and Society argue that the inclusion of the "c/o"

provision is clear evidence that they are not independent parties to the contract. Dkt. No. 23 at 9.

"The language of a contract is not made ambiguous simply because the parties urge different interpretations." Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992). The Court need not accept Liu Jo's interpretation of the contract as true when that interpretation goes against the contract's plain language, which the Court is bound to impose. See Alexander v. Bd. of Educ. of City Sch. Dist. of City of New York, 107 F. Supp. 3d 323, 331 (S.D.N.Y. 2015), aff'd sub nom. Alexander v. The Bd. of Educ. of City of New York, 648 F. App'x 118 (2d Cir. 2016) ("Where, as here, the allegations pled in the complaint are contradicted by documents on which the complaint relies the reviewing court need not accept as true an allegation pled nor draw inferences in its favor." (citation and quotation marks omitted)); Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc., 716 F.3d 302, 313 (2d Cir. 2013) ("At the outset, the court must determine whether the language the parties have chosen is ambiguous, after giving all 'words and phrases ... their plain meaning.'" (citations omitted)).

The fact that Society is listed as the c/o of Kendall Jenner Inc. is insufficient to transform Society or Elite into a party of the contract. The plain meaning of c/o or "care of" is "at the address of." See Merriam-Webster's Online Dictionary,

- 17 -

https://www.merriam-webster.com/dictionary/care%20of (last visited Sept. 12, 2022) (defining "care of"). Thus, the plain meaning of the provision is "Kendall Jenner, Inc. at the address of The Society Model Management Inc. ("Talent")." The Term Sheet clearly defines KJI as the Talent. There is no independent listing of Society or Elite as a party to the contract.

Further, "terms in a contract must be assumed to have the same meaning throughout" and other provisions in the contract reinforce interpreting "c/o" in accordance with its plain meaning. See U.S. Bank Nat'l Ass'n v. T.D. Bank, N.A., 569 B.R. 12, 23 (S.D.N.Y. 2017). The compensation provision requires the fee "to be paid to Talent c/o The Society Model Management Inc." Compl. Ex. A at 2. In other words, the provision requires the fee to be paid to Kendall Jenner, Inc. at the address of The Society Model Management. If the Court were to adopt Liu Jo's interpretation that c/o makes Society and Elite independent parties, the provision would be duplicative, reading "to be paid to Kendall Jenner, Inc. c/o The Society Model Management Inc. c/o The Society Model Management Inc.").[3] See Olin Corp. v. Am. Home Assur. Co., 704 F.3d 89, 99 (2d Cir. 2012) ("Any

---

[3] Liu Jo also argues that the compensation provision (requiring "$1,500,00 + 20% service fee, to be paid to Talent c/o The Society Model Management Inc") obliged it to pay the 20% service fee in exchange for the services Society and Elite were to provide under the Agreement. Dkt. No. 47 at 6. But there is nothing in the Agreement that says the 20% service fee is to be paid to Society or Elite. In fact, the plain language of the Agreement calls for the fee to be paid to Talent, KJI.

interpretation of a contract that 'has the effect of rendering at least one clause superfluous or meaningless ... is not preferred and will be avoided if possible.'" (citation omitted)).

Liu Jo's allegation that Ayisha Morgan, General Counsel for Elite, signed the Term Sheet "as an authorized representative of The Society and Ms. Jenner" does not create a contract between Liu Jo and the Society or Elite. Compl. ¶ 21. Again, the plain language of the Term Sheet contradicts Liu Jo's interpretation. Morgan signed as the "authorized representative of TALENT," defined in the Term Sheet as "Kendall Jenner Inc. c/o Society Model Management Inc." The plain language of the contract thus shows that Ms. Morgan was not operating on behalf of Society or Elite.

There is also no plausible allegation of a valid and enforceable contract between Liu Jo and Society or Elite as an agent of principal Kendall Jenner, Inc.

As a threshold matter, the Court must decide whether Elite and Society can establish the existence of an agency relationship exists between themselves and Kendall Jenner, Inc. Nippon Yusen Kaisha v. FIL Lines USA Inc., 977 F. Supp. 2d 343, 350 (S.D.N.Y. 2013) ("'[T]he party asserting that a relationship of agency exists generally has the burden in litigation of establishing its existence.'" (quoting Restatement (Third) of

Agency § 1.02 cmt. d)). Liu Jo argues that a "motion to dismiss is not the appropriate avenue to conduct fact discovery and determine whether an agency relationship exists." Dkt. No. 47 at 10.

Although it is true that "where the circumstances alleged in the pleading raise the possibility of a principal-agent relationship, and no written authority for the agency is established, questions as to the existence and scope of the agency are issues of fact and are not properly the basis of a motion to dismiss," see, e.g., Heredia v. United States, 887 F. Supp. 77, 80 (S.D.N.Y. 1995), this principle is inapplicable here because a written authority—the Term Sheet—establishes the agency relationship between KJI and Elite and Society.

An agency relationship "can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." Nationwide Life Ins. Co. v. Hearst/ABC-Viacom Ent. Servs., No. 93 CIV. 2680 (RPP), 1996 WL 263008, at *7 (S.D.N.Y. May 17, 1996). Here, the Term Sheet is evidence that KJI wanted Elite and Society to act on its behalf. The Term Sheet identifies Elite and Society as the "authorized representative" and the "care of" agent of Kendall Jenner, Inc. "[T]he best evidence of intent is the contract itself; if an agreement is 'complete, clear and

unambiguous on its face[, it] must be enforced according to the plain meaning of its terms.'" Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 177 (2d Cir. 2004) (citation omitted) (alteration in original). Accordingly, the Term Sheet establishes the intent of KJI and Elite and Society to create an agency relationship.

Liu Jo argues that Elite and Society do not meet their burden of establishing an agency relationship because Liu Jo never "'consented to treat [the Society Defendants] as agents' of Ms. Jenner." Dkt. No. 47 at 11 (alteration in original) (citation omitted). But consent by a third party is not a prerequisite to establishing an agency relationship.

The agency-principal relationship is disclosed if "at the time of a transaction conducted by an agent, the other party to the contract had notice that the agent was acting for the principal and of the principal's identity." Safety Env't, Inc. v. Barberry Rose Mgmt. Co., 942 N.Y.S.2d 200, 202 (2d Dep't 2012). In the Complaint, Liu Jo admits to having notice that Elite and Society were acting as agents of Kendall Jenner, Inc. See Dkt. No. 1 ¶ 21 ("Through Elite World Group and The Society Model Management, Kendall Jenner and Kendall Jenner, Inc. engaged in purposeful activities in the state of New York. On information and belief, Elite World Group and The Society Model Management act as agents on behalf of Kendall Jenner and Kendall

Jenner, Inc. With Ms. Jenner's knowledge and consent, Elite
World Group and The Society Model Management execute contracts
in the state of New York on behalf of Kendall Jenner and Kendall
Jenner, Inc. regarding Ms. Jenner's modeling appearances."); id.
at ¶ 26 ("Ms. Ayisha Morgan of Elite World Group signed the
Agreement as an authorized representative of The Society and Ms.
Jenner."); id. at ¶ 4 ("Kendall Jenner, through her company
Kendall Jenner, Inc., directed Liu Jo to remit all payments
under the Agreement to The Society in New York City.").

In its Opposition to this Motion to Dismiss, Liu Jo
attempts to recharacterize those allegations not as confessions
of an agency relationship but as descriptions of "the
unremarkable idea that [Elite and Society] contract with clients
for Ms. Jenner's modeling appearances." Dkt. No. 47 at 12. But
"it is axiomatic that the Complaint cannot be amended by the
briefs in opposition to a motion to dismiss." Red Fort Cap., Inc
v. Guardhouse Prods. LLC, 397 F. Supp. 3d 456, 476 (S.D.N.Y.
2019). For the purposes of executing the Term Sheet, Liu Jo had
notice that Elite and Society were agents of KJI.

"Under New York law, an agent who signs an agreement on
behalf of a disclosed principal will not be individually bound
to the terms of the agreement 'unless there is clear and
explicit evidence of the agent's intention to substitute or
superadd his personal liability for, or to, that of his

- 22 -

principal.'" Lerner v. Amalgamated Clothing & Textile Workers
Union, 938 F.2d 2, 5 (2d Cir. 1991). Such evidence of intent
includes "Customs and usage in the industry, the circumstances
of the transaction and the form of the actual agreement." New
York Times Co. v. Glynn-Palmer Assocs., Inc., 525 N.Y.S.2d 565,
567 (Civ. Ct. 1988).

Neither the Complaint nor the Term Sheet makes any
allegation that Elite or Society intended to be bound personally
to the contract. Ms. Morgan signed the Term Sheet only once as
the authorized representative of Kendall Jenner, Inc. See
Georgia Malone & Co. v. Ralph Rieder, 86 A.D.3d 406, 408, 926
N.Y.S.2d 494 (2011), aff'd sub nom. Georgia Malone & Co. v.
Rieder, 973 N.E.2d 743 (2012) (holding agent did not intend to
be personally bound to the contract when he "only signed the
contract once, rather than signing twice, which is the general
practice when an individual wishes to be personally bound").

Liu Jo argues in its Opposition to the Motion to Dismiss
that the 20% service fee is evidence of Elite and Society's
intention to be personally bound. Dkt. No. 47 at 12. But nowhere
does the contract call for Elite or Society to receive that fee.
And the Complaint does not allege that it is the custom in the
industry for agents to receive a contracted service fee as
consideration for personal liability. Cf. New York Times Co. v.
Glynn-Palmer Assocs., Inc., 525 N.Y.S.2d 565, 568 (Civ. Ct.

1988) ("Despite the post trial brief of The Times, there is no proof whatever in the record that there is a custom and usage in the industry by which advertising agents implicitly agree to be liable for the cost of advertisements placed for their clients. The court may not make assumptions about custom and usage or take judicial notice of it.").

Liu Jo has failed to plausibly allege a contractual relationship between itself and Elite and Society. Accordingly, it has failed to state a claim for breach of contract against Elite and Society.

"A cause of action based upon a breach of a covenant of good faith and fair dealing requires a contractual obligation between the parties." Duration Mun. Fund, L.P. v. J.P. Morgan Sec., Inc., 908 N.Y.S.2d 684, 685 (1st Dep't 2010). Because no such contract exists between Liu Jo and Elite and Society, Liu Jo has failed to state a claim of breach of the implied covenant of good faith against Elite or Society.

Accordingly, Society's and Elite's motion to dismiss for failure to state a claim of breach of contract and breach of the implied covenant of good faith is granted.

### ii.  Kendall Jenner

There is no plausible allegation of a valid and enforceable contract between Liu Jo and Kendall Jenner as an individual party.

Liu Jo argues that the Complaint provides sufficient facts to allege that Jenner is bound in her personal capacity because the Term Sheet indicates its intent and expectation to bind Jenner. Dkt. No. 48 (Pl. Opp. Mem.) at 10-12. Specifically, Liu Jo points to how Jenner, not KJI, was expected to fulfill the Term Sheet's obligations, like appearing for photoshoots, posting on social media, conducting interviews, and how, in exchange, Liu Jo was obliged to provide services for Jenner's personal benefit, like airfare, hotel accommodations, and security. Id. at 10-11.

"The ultimate issue, as always, 'is the intent of the parties.'" Vacold LLC v. Cerami, 545 F.3d 114, 125 (2d Cir. 2008) (citation omitted). The "'best evidence of what parties to a written agreement intend is what they say in their writing.'" Nasdaq, Inc. v. Exch. Traded Managers Grp., LLC, 431 F. Supp. 3d 176, 227 (S.D.N.Y. 2019) (quoting Kasowitz, Benson, Torres & Friedman, LLP v. Duane Reade, 950 N.Y.S.2d 8, 11 (1st Dep't 2012)). When the allegations of a party's intent are contradicted by the plain language of the document, the Court need not accept as true the allegations pled nor draw inferences in their favor. See MBIA Inc. v. Certain Underwriters at Lloyd's, 33 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) ("Allegations in the complaint that are 'contradicted by . . . documentary evidence' are not entitled to a presumption of truthfulness.").

- 25 -

Here, the plain language of the Term Sheets lists "Kendall Jenner, Inc. c/o The Society Model Management Inc." as the party to the contract. The Complaint alleges that Kendall Jenner "is the sole active Officer of Kendall Jenner, Inc." Compl. ¶ 16. But, "[i]t is well established in New York that an officer of a corporation is not individually liable for the contractual obligations of that corporation absent a clear intent to create individual liability," which even Liu Jo does not argue exists here. Usov v. Lazar, 2013 WL 3199652, at *4-5 (S.D.N.Y. June 25, 2013).

The fact that the Term Sheet confers benefits to Kendall Jenner does not transform her into a party thereto. See N.F. Gozo Corp. v. Kiselman, 960 N.Y.S.2d 846, 848 (App. Term 2012) ("While the status of an intended third-party beneficiary gives that individual a right to sue on a contract to which that individual is not a party, this status does not confer upon one of the parties to the agreement the right to sue the third-party beneficiary."). Additionally, the fact that the Term Sheet distinguishes between Talent, Kendall Jenner, Inc., as the contracting party, and Kendall Jenner, as the recipient of certain additional benefits, shows that the parties understood the two to be separate entities. See Compl. Ex. A at 3 ("5-star hotel accommodations of Talent's choosing for Kendall"). The

plain language of the contract thus shows that Jenner was not personally a party.

As an alternative, Liu Jo argues that the Complaint has pled sufficient facts to pierce Kendall Jenner, Inc.'s corporate veil and hold Jenner as an alter ego personally liable for KJI's acts.

When, as here, a cause of action arises under the Court's diversity jurisdiction, "the Court must first determine which jurisdiction's substantive law governs the issue of alter ego liability." Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni, No. 15 CV 9003, 2016 WL 5719793, at *3 (S.D.N.Y. Sept. 30, 2016). "Federal courts exercising diversity jurisdiction apply the choice-of-law rules of the forum state, here New York, to decide which state's substantive law governs." Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 175 (2d Cir. 2000). Under New York's choice-of-law rules, "'the law of the jurisdiction having the greatest interest in the litigation will be applied,'" which, in cases where the court must determine whether a corporate form will be disregarded, is the state of incorporation. Kalb, Voorhis & Co. v. Am. Fin. Corp., 8 F.3d 130, 132 (2d Cir. 1993) (quoting Intercontinental Planning, Ltd. v. Daystrom, Inc., 24 N.Y.2d 372, 382 (1969)). Here, Kendall Jenner, Inc. is incorporated in California, so California law applies to the assessment of Liu Jo's alter ego theory.

Under California law, piercing the corporate veil is warranted: (1) "when there is unity of interest and ownership such that the separate personalities of the corporation and the individual no longer exist" and (2) "if the acts are treated as those of the corporation alone, an inequitable result will follow." Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress, 402 F. Supp. 3d 615, 661 (N.D. Cal. 2019) (citing Say & Say, Inc. v. Ebershoff, 25 Cal. Rptr. 2d 703 (Cal. App. 2d Dist. 1993)). The second factor must be pled for each claim. Pac. Mar. Freight, Inc. v. Foster, No. 10 CV 0578, 2010 WL 3339432, at *7 (S.D. Cal. Aug. 24, 2010).

Starting with the second factor, "inequitable results flowing from the recognition of the corporate form include the frustration of a meritorious claim, perpetuation of a fraud, and the fraudulent avoidance of personal liability." Id. California courts generally require evidence of some bad-faith conduct, like misrepresentation and willful breach, that make it inequitable to recognize the corporate form. Id.

The Complaint alleges that "Defendant Kendall Jenner is the sole active Officer of Kendall Jenner, Inc. and operates Kendall Jenner, Inc. as an alter ego." Compl. ¶ 16. That conclusory allegation provides no facts that show an "inequitable result" will follow from only treating KJI in the corporate form. See Alkayali v. Hoed, No. 18-CV-00777, 2018 WL 4537596, at *6 (S.D.

Cal. Sept. 20, 2018) ("Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting both of the necessary elements."). As a result, Liu Jo has failed to sufficiently allege that Jenner is the alter ego of KJI.

The Complaint thus fails to allege the existence of an agreement or duty between Liu Jo and Jenner, in her personal capacity or as an alter ego of KJI.  Accordingly, Liu Jo's claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Kendall Jenner are dismissed. See Duration Mun. Fund, L.P. v. J.P. Morgan Sec., Inc., 908 N.Y.S.2d 684, 685 (1st Dep't 2010) ("A cause of action based upon a breach of a covenant of good faith and fair dealing requires a contractual obligation between the parties."). Liu Jo is granted leave to amend these claims in order to allege specific facts supporting the alter ego factors.

**2. Duplicative Claims**

Kendall Jenner, Inc. argues that the claim against it for breach of the implied covenant of good faith and fair dealing must be dismissed as duplicative of the breach of contract claim.

"New York law ... does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same

facts, is also pled." Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 125 (2d Cir. 2013). Therefore, where a complaint alleges claims for breach of contract and breach of the implied covenant based on the same facts, the latter claim should be dismissed as redundant. Id. Here, Liu Jo's claim for breach of the implied covenant of good faith and fair dealing and its breach of contract claim clearly rests on the same facts of defendants allegedly failing to perform. See Compl. ¶ 53 (basing its breach of contract claim on the allegation that "Ms. Jenner has continually breached her obligations under the Agreement, including, but not limited to, through her actions outlined in paragraphs 23 through 49 above."); id. ¶¶ 60-61 (alleging its breach of the implied covenant claim on allegations that "Ms. Jenner has continually acted in bad faith through the course of Liu Jo's performance under the Agreement. These additional acts of bad faith include, but are not limited to, Ms. Jenner's actions outlined in paragraphs 23 through 49 above.").

Even if Liu Jo's argument that the claims are based on different facts were meritorious, "claims for breach of the implied covenant of good faith which seek to recover damages that are intrinsically tied to the damages allegedly resulting from the breach of contract must be dismissed as redundant." Rennaker Co. Consulting, Inc. v. TLM Grp., LLC, No. 16 CIV. 3787 (DAB), 2017 WL 2240235, at *6 (S.D.N.Y. Mar. 29, 2017); ARI &

Co. v. Regent Int'l Corp., 273 F. Supp. 2d 518, 523 (S.D.N.Y. 2003). Liu Jo seeks breach of contract damages worth the entirety of what it would have paid under the contract, $1.8 million, and breach of the implied covenant damages worth the amount that it has already paid out under the contract, $1.35 million. Compl. ¶¶ 55 & 62. Although the amounts differ, both amounts derive from the contract price and are intrinsically tied.

Accordingly, the claim of breach of the implied covenant of good faith and fair dealing is redundant of the breach of contract claim. KJI's motion to dismiss the implied covenant claim is granted.

### C. Unjust Enrichment Claims

To support a claim of unjust enrichment, a "plaintiff must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered." See, e.g., Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 944 N.E.2d 1104, 1110 (N.Y. 2011) (internal citation and quotation omitted).

### 1. Against Society and Elite

Liu Jo has stated a claim for unjust enrichment against Society and Elite.[4] The Complaint alleges that Ms. Jenner "received monies that Liu Jo paid in anticipation of services Ms. Jenner agreed to provide," "refused to provide the agreed-upon services," "failed to make restitution to Liu Jo for services she failed to render," and "has been unjustly enriched in an amount . . . no less than $900,000." Compl. ¶¶ 64-66, 68. The Complaint collectively refers to all defendants as Ms. Jenner. Id. at ¶ 1.

Elite and Society allege that Liu Jo impermissibly uses group pleading in the Complaint in violation of Rule 8(a). "Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it." Holmes v. Allstate Corp., No. 11-CV-1543, 2012 WL 627238, at *22 (S.D.N.Y. Jan. 27, 2012). In other words, a plaintiff cannot simply "lump" defendants together for pleading purposes. Ritchie v. Northern Leasing Systems, Inc., 14 F. Supp. 3d 229, 236 (S.D.N.Y. 2014).

---

[4] Society and Elite argue that it is "axiomatic under New York law that '[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.'" Dkt. No. 49 (Reply) at 10 (quoting Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 388 (1987)). This principle carries no weight though when, as here, there is no contract between the parties. Society and Elite cannot claim to be non-parties to a contract but then seek its application to avoid a quasi-contract claim, which applies "in the absence of an express agreement." See Clark-Fitzpatrick, Inc., 70 N.Y.2d at 388.

However, "nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." Vantone Group Limited Liability Co. v. Yangpu NGT Industrial Co., No. 13-CV-7639, 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015). "The key to Rule 8(a)'s requirements is whether adequate notice is given," and that "fair notice" is "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." Wynder v. McMahon, 360 F.3d 73, 79 (2d Cir. 2004).

The Complaint adequately enables Society and Elite to answer and prepare for trial. It alleges that Liu Jo "strictly adher[ed] to the payment schedule" in remitting "payments under the Agreement to The Society in New York City," that Liu Jo was "was required to pay a 20% service fee for each payment," that Jenner did not partake in the second photoshoot as obligated by the contract negotiated by Elite and Society, that "Ms. Jenner and her team did not respond" to Liu Jo's attempts to reschedule, and that defendants "continued to refuse to return any funds paid by Liu Jo." Compl. ¶¶ 21, 29, 31, 34, 39, 49. "Fed.R.Civ.P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged." Atuahene v.

City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001). The Complaint gives sufficient notice to Elite and Society.

Society's and Elite's arguments to the contrary are unconvincing. First, they argue that Liu Jo cannot plausibly allege that they were enriched by Liu Jo's payments because the Complaint does not identify any obligation they failed to fulfill and all payments were to be remitted to Talent, such that even if they were enriched it was by the principal, Kendall Jenner, Inc., not Liu Jo, and in exchange for work completed for Jenner and KJI. Dkt. No. 23 at 12-13; Dkt. No. 49 at 10-11. But unjust enrichment "does not require the performance of any wrongful act by the one enriched." Simonds v. Simonds, 45 N.Y.2d 233, 242 (1978). "What is required, generally, is that a party hold property 'under such circumstances that in equity and good conscience he ought not to retain it.'" Id. (citations omitted); e.g., Alan B. Greenfield, M.D., P.C. v. Long Beach Imaging Holdings, LLC, 114 A.D.3d 888, 889 (N.Y. App. Div. 2014). Liu Jo alleged that it has made the "required payments to The Society for Ms. Jenner's services," Compl. ¶ 59, and, drawing all inferences in Liu Jo's favor, it is plausible that Society and Elite still possess the payments to date. Additionally, material questions of fact exist as to whether any portion of the 20% service fee was retained by Society and Elite.

Second, Society and Elite argue that Liu Jo cannot succeed on an unjust enrichment claim because there is no "'connection or relationship between the parties that could have caused reliance or inducement on the plaintiff's part.'" Dkt. No. 49 at 11 (Quoting Georgia Malone & Co., 86 A.D.3d at 408). But the very case Society and Elite relies on shows that, like here, such a relationship can exist between a plaintiff who has direct contact with the agent of the principal who is contracted with the plaintiff. See Georgia Malone & Co., 86 A.D.3d at 408 (holding there was a relationship between the plaintiff and the defendant, who was not a party to the contract but an agent of the contract principal, when the defendant agent had direct communications with the plaintiff and provided assurances).

Liu Jo sufficiently pleads that there was direct contact with Society and Elite such that their relationship could have caused reliance. See Compl. ¶ 39 ("Ms. Jenner and her team did not respond until October 7th); id. ¶ 35 ("The parties originally negotiated a date of March 31, 2020 for the second photoshoot to also take place in London, England."); id. ¶ 21 ("Elite World Group and The Society Model Management act as agents on behalf of Kendall Jenner and Kendall Jenner, Inc. With Ms. Jenner's knowledge and consent, Elite World Group and The Society Model Management execute contracts in the state of New York on behalf

of Kendall Jenner and Kendall Jenner, Inc. regarding Ms.
Jenner's modeling appearances.").

Accordingly, Society's and Elite's motion to dismiss the
unjust enrichment claim against them is denied.

### 2. Against Kendall Jenner

Liu Jo has stated a claim for unjust enrichment against
Kendall Jenner.

Kendall Jenner argues for dismissal of the claim on the
grounds that Liu Jo has filed to allege facts to show a
"sufficiently close" relationship between them and to show that
Kendall Jenner, and not Kendall Jenner, Inc., was enriched.

The Complaint alleges the existence of "a connection or
relationship between the parties that could have caused reliance
or inducement on the plaintiff's part." See Georgia Malone & Co.,
86 A.D.3d at 408. It establishes the connection between Jenner
and Liu Jo by showing Jenner participated in the conversation
with Liu Jo over when to reschedule the second photoshoot. See
Dkt. No. 1 (Compl.) ¶ 39 ("After Ms. Jenner refused to partake in
a September shoot, she suggested a number of days in October
where the parties could meet in London, England for the second
photoshoot."); id. at ¶ 41 ("she consistently rejected Liu Jo's
attempts to reschedule"); id. at ¶ 43 ("Ms. Jenner also claimed
that she was unable to travel to Italy due to her health concerns

relating to the Coronavirus pandemic"). Further, it can be inferred that Liu Jo entered into the contract because it was relying on Jenner's, not KJI's, performance of it. The Term Sheet shows that Jenner, not KJI, was the one required to perform the physical services the parties contracted for. See id. Ex. A at 1 ("fitting day before shooting day"); id. (two photoshoots); id. (10 social media posts). Accordingly, there is a connection between Liu Jo and Jenner sufficient to have induced Liu Jo to enter the contract with KJI.

The Complaint adequately alleges specific facts that Kendall Jenner was enriched in her personal capacity. It states that Jenner "is the sole active Officer of Kendall Jenner, Inc." Id. at ¶ 16. Money remitted to KJI is thus for Jenner's benefit.

Accordingly, Kendall Jenner's motion to dismiss the unjust enrichment claim is denied, with leave to amend.

### 3. Against Kendall Jenner, Inc.

Kendall Jenner, Inc. again argues for dismissal on the grounds that the claim is duplicative of the breach of contract claim.

"Unjust enrichment is a quasi-contractual claim that ordinarily can be maintained only in the absence of a valid, enforceable contract." Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 202 (S.D.N.Y. 2011). Although Liu Jo contends that its unjust enrichment claim

"should survive as an alternative theory of liability to breach of contract, such an option is only viable when, unlike here, the validity of the underlying contract is in dispute." KCG Americas LLC v. Brazilmed, LLC, No. 15 CIV. 4600(AT), 2016 WL 900396, at *7 (S.D.N.Y. Feb. 26, 2016). Because the validity of the contract between Liu Jo and KJI is not in dispute, the unjust enrichment claim against KJI cannot be maintained.

Kendall Jenner, Inc.'s motion to dismiss the unjust enrichment claim is granted, without leave to amend.

### CONCLUSION

Defendants Society and Elite's motion to dismiss the complaint for failure to state a claim (Dkt. No. 26) is granted in part and denied in part.

Their motion to dismiss the breach of contract claim (Count I) and the breach of the implied covenant of good faith and fair dealing (Count II) is granted, with prejudice, as no further pleading can alter the words in the Term Sheet. Their motion to dismiss the unjust enrichment claim (Count III) is denied.

Defendants Kendall Jenner and Kendall Jenner, Inc.'s motion to dismiss for lack of personal jurisdiction (Dkt. No. 40) is denied. Their motion to dismiss for failure to state a claim (Dkt. No. 40) is granted in part and denied in part. Their motion to dismiss the breach of the implied covenant and unjust enrichment claims against Kendall Jenner, Inc. is granted,

without leave to amend because additional facts would be insufficient as a matter of law.

Their motion to dismiss the breach of contract and breach of the implied covenant claims against Kendall Jenner is granted, with leave to amend, as additional facts may be sufficient to pierce the corporate veil. Their motion to dismiss the unjust enrichment claim is denied.

So Ordered.

Dated: New York, New York
       September 22, 2022

                                    Louis L. Stanton
                                    LOUIS L. STANTON
                                    U.S.D.J.